UNITED FARM BUREAU MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. THOMAS C. ELDER, Defendant-Appellant.—(EDWARD SZCZESNIAK, Defendant.)

First District (4th Division)   No. 79-1575

Opinion filed October 23, 1980.

John M. Burke, of Burke & Burke, Ltd., of Chicago, for appellant.

Michael W. Rathsack, of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The dispute in this lawsuit centers around the question of whether the automobile of Thomas C. Elder, the defendant-insured, was a replacement automobile or an additional automobile under the insurance policy issued by United Farm Bureau, the plaintiff-insurer. Under the terms of the policy, a replacement automobile would have coverage whereas an additional automobile would not have coverage. Also in issue is whether or not that determination is a question of law or fact. United filed a declaratory judgment action. Its motion for summary judgment was allowed.

Thomas Elder purchased a Ford truck in April 1975. The truck was taken to United's office for inspection and an insurance policy was issued. The policy provided liability coverage arising out of the ownership, maintenance or use of the Ford truck, the "owned automobile." On June 4, 1976, Thomas Elder acquired a Volkswagen van without disposing of the Ford truck. He did not notify United of the acquisition nor did he take the Volkswagen van to the United agent for inspection. More than 30 days after the acquisition of the Volkswagen van, on Septmber 11, 1976, Elder was involved in an automobile accident. An action was brought against Thomas Elder as a result of that accident.

"Owned automobile" as defined in the policy included a "newly acquired" automobile. "Newly acquired" in turn was defined as:

"(1) A *replacement* automobile that replaces and is used for the same purpose as an owned automobile described in this policy, and (2) an *additional* automobile acquired by the named insured and used for the same purposes as an owned automobile * * *." (Emphasis added.)

The policy further provided that if the insured acquired a replacement automobile the insured was to notify the company within one year, and that if the insured acquired an additional automobile notice was to be given within 30 days. The premium was to be adjusted as of the date of delivery.

United argues that the Volkswagen van is an additional automobile and because United was not notified within 30 days of the acquisition of the additional automobile United provided no coverage. Elder argues that this is a replacement automobile and notification to the company was not required for one year.

United's motion for summary judgment included Elder's deposition and his answers to interrogatories. Elder's response included his affidavit and affidavits of his wife, Nelda Elder, P. J. Young, and Doug Amos.

Elder stated in the deposition that after he purchased the Volkswagen van the Ford truck was never driven on any public highway and it was merely operated on his farm to keep it in running condition. It was

used to store vegetables. He owned the truck merely because he was unable to sell it. He did not acquire an additional vehicle but rather this was a replacement vehicle. Prior to the purchase of the Volkswagen van the Ford truck was used as daily transportation to and from his place of employment. Immediately after purchasing the Volkswagen van the van was used for those same purposes.

Nelda Elder's affidavit stated she had the responsibility of purchasing insurance. She read the policy and learned that if any replacement vehicle was purchased coverage was afforded if the company was notified within one year. She advised her husband that they need not notify the insurance company for one year. The truck was placed for sale and was not driven on any highway.

The affidavits of Young and Amos stated that between June 4, 1976, and September 11, 1976, the time of the accident, the Ford truck was situated on the property of Thomas Elder displaying a for-sale sign. Furthermore, they did not see the truck driven between those dates.

United relies substantially upon the case of *Nationwide Insurance Co. v. Ervin* (1967), 87 Ill. App. 2d 432, 231 N.E.2d 112. There the parties agreed that if the determination was made that the Cadillac was a replacement automobile there would be coverage, but that if the Cadillac was an additional automobile there would be no coverage. The matter was decided after a trial, not on motion as was done in the instant case. The evidence from the insured was that the original car, a Chevrolet, had completely broken down and that the Cadillac was purchased to replace the Chevrolet. A new license was secured for the Cadillac and the insured explained that he did not sell or trade the Chevrolet because he still owed a substantial balance to the finance company for its original purchase. The insured stated that it would have cost $75 to have the Chevrolet repaired and that he purchased the Cadillac with no cash down payment. The insured stated to an adjuster for an insurance company that he bought the Cadillac as an additional automobile for one of the children. In addition, he admitted he would have driven the Chevrolet to work after it was fixed if he had possessed a valid driver's license. The trial court found in favor of the insured. The appellate court reversed that finding.

United here emphasizes that portion of the *Nationwide* opinion which says that the insurer provided coverage "for a second automobile for only a short time to permit the owner adequate opportunity to acquire the necessary additional insurance and was never intended to cover two automobiles for any protracted period." (87 Ill. App. 2d 432, 436, 231 N.E.2d 112, 115.) Also, a "replacement could only exist under the provisions of this contract where the insurer had no further obligations in regard to the named automobile." 87 Ill. App. 2d 432, 437, 231 N.E.2d 112, 115.

Insurance contracts are construed in accordance with general rules of contract law. The construction of a contract is a matter for the court; the interpretation is a question of fact for the trier of fact. (*Loeb v. Hammond* (7th Cir. 1969), 407 F. 2d 779.) While construction of a contract involves the legal effect of that contract, the interpretation considers the meaning of the words. Interpretation has as its guiding principle the ascertainment of the intent of the parties. 4 Williston, Contracts §600, at 284 (3d ed. 1961); see 3 Corbin, Contracts §532, at 2 (1960); 17A C.J.S. *Contracts* §616, at 1248 (1963).

There is no question of the construction, that is, the legal effect of the contract. The legal effect is that if the Volkswagen van is found to be a replacement vehicle United must provide coverage under the insurance contract and if it is found to be an additional vehicle there is no coverage. Presented is a question of interpretation—what is meant by the words replacement and additional.

It has been stated that where the meaning of a writing is uncertain or ambiguous and parol evidence is introduced in aid of its interpretation, and if, after considering the language in light of the parol evidence introduced, there remains a doubt of its meaning, then the question of its meaning must be left to the trier of fact. (*Schneider v. Neubert* (1923), 308 Ill. 40, 43, 139 N.E.84, 85; *Nerone v. Boehler* (1976), 34 Ill. App. 3d 888, 340 N.E.2d 534; 1 Williston, Contracts §116, at 652 (3d ed. 1957).) There is an ambiguity where, although the evidence is not conflicting, more than one inference may be drawn from that evidence. 17A C.J.S. *Contracts* §617, at 1253 (1963).

We believe that the contract here is uncertain or ambiguous. Accepting as true for the purposes of this motion for summary judgment statements of Elder made in his deposition and in his affidavits and the affidavits of Nelda Elder, Young and Amos, we believe that different inferences may be drawn from those facts. It may be inferred by the trier of fact, either the court or a jury, that the intention of the parties after considering the parol evidence was that the purchase of the Volkswagen van was a replacement vehicle even though the Ford truck was retained by Elder. Conversely, the trier of fact might find that that is not in fact so and, after considering the credibility of the witnesses, that Elder did indeed purchase an additional vehicle. Similar determinations of whether the evidence presented fit within the terms of a contract have been considered questions of fact. In *Ball v. Benjamin* (1870), 56 Ill. 105, 107, it was held that it was a question of fact for the jury to determine whether a particular machine was, pursuant to the term of the contract, "material used in the construction of the planing mill." In *Tomasek v. City of Edwardsville* (1913), 183 Ill. App. 493, the question whether the sewers were of "sufficient capacity" under the terms of the contract was for the

jury. In *Knickerbocker Roofing & Paving Co. v. Mendius Associates, Inc.* (1968), 95 Ill. App. 2d 96, 237 N.E.2d 813, the question of whether the hoisting of two cans of gasoline was a part of an oral agreement "to lift * * * materials" was a question of fact.

Although the meaning of language is always a question of fact, if the words employed can be given but one meaning and if that meaning is so clear that only one conclusion can be reached, it is the duty of the court to decide the question of fact for itself. (*Schneider v. Neubert* (1923), 308 Ill. 40, 139 N.E.2d 84.) Considering the definition of a replacement automobile is one that "replaces and is used for the same purposes as an owned automobile" and the facts in the record that the Ford truck was not used as it had been used before, that it was only used on the farm in order to keep it running and that the vehicle was placed for sale along with the other facts, we cannot say that the meaning is so clear that only one conclusion could be reached.

Returning now to the case relied on principally by United, *Nationwide*, we believe the court concluded that the evidence in favor of the insured was so unsatisfactory that the trial court's finding for the insured had to be reversed. In *Nationwide* the insured admitted that he bought the Cadillac as an additional automobile for one of the children and that he would have driven the original car, the Chevrolet, if he had a valid driver's license.

In *Nationwide* the court stated that the policy covered two automobiles for a short period of time in order for the insured to obtain the additional necessary insurance. That factual setting does not appear in the case at bar. There is nothing to suggest that the insured is seeking coverage for two automobiles. It is the insured's contention that the Volkswagen van was a replacement vehicle and that it was the vehicle insured at the time of the accident.

The determination of whether this is a replacement or an additional automobile is a question of fact. The judgment is reversed, and the cause is remanded to the trial court for further proceedings.

Reversed and remanded.

LINN, P. J., and JOHNSON, J., concur.