*In re* DRAINAGE DISTRICT NO. 1 OF THE TOWN OF CERRO GORDO IN THE COUNTY OF PIATT.—(DRAINAGE DISTRICT NO. 1 OF THE TOWN OF CERRO GORDO IN THE COUNTY OF PIATT, Plaintiff-Appellant, *v.* THE VILLAGE OF CERRO GORDO, Defendant-Appellee.)

Fourth District   No. 17617

Opinion filed May 12, 1982.—Rehearing denied June 11, 1982.

Mary A. Perlstein, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant.

Burger, Fombelle, Wheeler & Dvorak, P. C., of Decatur, for appellee.

JUSTICE MILLS delivered the opinion of the court:

This case involves a contract for drainage improvements.

In 1970, Drainage District No. 1 (District) and the Village of Cerro Gordo (Village) entered into an agreement whereby the Village agreed to pay for benefits received by virtue of drainage improvements made by the District. The agreement—said to be for "the purpose of adjusting their claim for benefits"—provided:

"* * *

2. The Village of Cerro Gordo, Illinois further agrees to have the existing annual maintenance assessment roll of said District amended * * * by setting forth thereon the name of said Village * * * and placing under the column headed 'Annual Benefits' the sum of $500.00, *which sum the parties hereto represent and agree as being the fair and reasonable proportionate share said Village of Cerro Gordo should pay for the cost of future maintenance and repair work performed by said District on its drainage system.* * * * [S]aid annual maintenance assessment shall be collected in

the same manner as assessments of annual benefits against the lands and other property situated in said District * * *.

3. This agreement is entered into pursuant to the provisions of the Illinois Drainage Code and shall not be binding upon the parties hereto unless approved by order of the Circuit Court * * *.

4. That the Village * * * shall be responsible for payment of said $500.00 annual maintenance assessment only in those years in which said drainage district levies its full annual maintenance assessment * * * and, further, in those years in which said drainage district levies less than the full annual maintenance assessment, the $500.00 annual maintenance assessment * * * shall be reduced proportionately *so that said Village * * * shall pay on the same proportionate basis as other lands and property situated within said drainage district.*

6. [*sic*]. That in no event shall the Village * * * be responsible for any portion or proportionate share of any fees and expenses incurred by said drainage district in connection with any annual or additional assessments, including, but not limited to, fees and expenses for commissioners, attorneys and court costs." (Emphasis added.)

Following the procedure prescribed by section 11—5 of the Illinois Drainage Code (Ill. Rev. Stat. 1969, ch. 42, par. 11—5), the contract was submitted to and approved by the circuit court.

On June 17, 1981, the District filed a petition for authority to perform maintenance work, levy additional assessment, and increase and levy annual maintenance assessments. The bottom line was an increase in total assessments for the District in the amount of $13,814.88—including an increase in the assessment against the Village from $500 to $5,180.58.

The Village moved to dismiss the petition, contending that the 1970 agreement limited to $500 the amount it could be assessed for drainage benefits. Following a hearing, the circuit court entered an order granting the District's petition, but refusing to increase the assessment against the Village beyond $500. The circuit court specifically found that the parties had agreed to $500 as the sum certain that the Village would owe for drainage benefits.

We disagree.

■■ The contract here is unambiguous, contains no uncertain terms, and its interpretation is one of law for the court. (*United Farm Bureau Mutual Insurance Co. v. Elder* (1980), 89 Ill. App. 3d 918, 412 N.E.2d 630, *rev'd on other grounds* (1981), 86 Ill. 2d 339, 427 N.E.2d 127.) We therefore make the independent determination that the parties by their agreement intended to fix a *proportionate share* of the assessment to be borne by the

Village and *not* any *fixed sum*. See *Rymer v. Kendall College* (1978), 64 Ill. App. 3d 355, 380 N.E.2d 1089.

Our determination is based on several factors. First, by its very terms, the contract provides that $500 is the "fair and reasonable proportionate share" that the Village should pay. Further, paragraph 4 of the agreement provides for a proportionate reduction in the Village's assessment in the event the District does not levy the full amount authorized for annual maintenance assessments. This further indicates that the $500 was not intended as a sum certain.

Contrary to the Village's argument, paragraph 6 of the agreement does not fix $500 as a sum certain. Rather, it shows that the parties foresaw a change in the amount of the annual assessment and litigation attendant thereto. Paragraph 6 simply indicates that the cost of obtaining an increased assessment may not be charged to the Village. It was not intended—and cannot be interpreted—to mean that the Village was not liable for its proportionate share of the increase.

The contract incorporated by reference the Illinois Drainage Code in effect at that time. (Ill. Rev. Stat. 1969, ch. 42, par. 1—1 *et seq.*) Section 11—2 of the Code provided, and still provides, that when a drainage district performs work which benefits land outside the district but within municipal corporations exercising drainage powers, then the municipal corporation is liable for the portion of the cost of the work which bears a relationship to the benefits received. The District cannot release the Village from this liability. It can only settle claims by entering into a contract fixing such a proportionate share. (See Ill. Rev. Stat. 1969, ch. 42, par. 11—4.) The language of the contract and the order approving it indicate that this is what was done.

The circuit court was thus in error when it dismissed that portion of the District's petition seeking an increase in the assessment against the Village. Therefore, we reverse and remand to the circuit court with directions to enter an order consistent with this opinion.

Reversed and remanded with directions.

GREEN, P. J., and TRAPP, J., concur.