DONALD MAYHEW, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Peabody Coal Company, Appellee).

Fifth District   No. 5—98—0453WC

Opinion filed May 4, 1999.

Harold B. Culley, Jr., of Culley & Wissore Lawyers, of Raleigh, for appellant.

Richard H. Risse, of Keefe & De Pauli, P.C., of Fairview Heights, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Claimant, Donald Mayhew, filed a claim pursuant to the Illinois Workers' Occupational Diseases Act (the Act) (820 ILCS 310/1 *et seq.* (West 1992)), seeking compensation for shortness of breath and exercise intolerance that he suffered as a result of 28 years of inhalation of coal dust, rock dust, fumes, and vapors, while employed by Peabody Coal Company (the employer). The employer filed a motion to dismiss the claim based on a prior settlement agreement (agreement). The arbitrator dismissed the claim as barred by this agreement. The Illinois Industrial Commission (the Commission) affirmed and adopted the arbitrator's decision. After a change of venue from Williamson County, the circuit court of Gallatin County confirmed the Commission's decision. For the following reasons, we affirm.

In May 1992, claimant filed an application for adjustment of claim for a back injury that he sustained on June 1, 1990, while employed by the employer.

In May 1994, claimant executed an agreement which included a release located in "Attachment 'A' " to that agreement and which stated in pertinent part that the agreement was in complete settlement of:

"any and all claims *** on account of the accident on or about 6/1/90 or any other claimed specific accidents or allegations of repetitive trauma or exposure to noise or materials during employment at Peabody *** and all known and unknown injuries which allegedly resulted from any said specific accident, claims of repetitive trauma, and/or claims of exposure to noise or materials during employment with Peabody ***. It is the intent of the parties to purchase the peace with regard to any and all claims which have been or could be brought pursuant to either the Illinois Worker's [*sic*] Compensation or Illinois Occupational Diseases Acts regarding Donald L. Mayhew and the parties intent [*sic*] for this provision of the contract to be enforced."

In June 1994, claimant was paid $100,000 for a strained back and for the above-mentioned release.

In July 1995, claimant filed his present claim under the Act for shortness of breath and exercise intolerance due to the inhalation of coal dust, rock dust, fumes, and vapors, which affected his lungs and/or heart. The date of his last exposure was to have been October 27,

1992. The employer filed a motion to dismiss, alleging that the release encompassed in the agreement barred his claim.

At hearing, the arbitrator rejected claimant's exhibit 3, which was a May 9, 1994, letter written by one of his lawyers concerning prior settlement negotiations. The arbitrator found that the terms of the agreement and release were clear and unambiguous and barred claimant's claim. Specifically, the arbitrator found that: (1) the words "exposure to materials" encompassed the claimed exposure by inhalation of coal dust, rock dust, fumes, and vapors; and (2) claims under the Act were clearly contemplated by the parties, noting that the release indicated the parties intended that the provision covering Act claims would be enforced between them. In dismissing claimant's claim, the arbitrator held:

> "The date of last exposure on the Occupational Disease claim (10/27/92) was nearly a year and a half prior to the date of his [claimant's] execution of the prior Settlement Contract on 5/13/94. Thus Petitioner knew or should have known of his occupational exposure *** and knew or should have known of his claimed injury *** when he executed the Settlement Contract ***."

The Commission affirmed and adopted the arbitrator's decision, and after a change of venue from Williamson County, the circuit court of Gallatin County confirmed the Commission's decision.

■ Whether a settlement agreement is clear or ambiguous is a question of law to be determined by the terms of the agreement itself. *Countryman v. Industrial Comm'n*, 292 Ill. App. 3d 738, 741 (1997). When an issue on appeal involves a question of law, the reviewing court is not obligated to defer to the Commission's decision. *Butler Manufacturing Co. v. Industrial Comm'n*, 85 Ill. 2d 213, 216 (1981). When an issue on appeal involves a question of fact, the Commission's decision will be upheld unless it is against the manifest weight of the evidence, *i.e.*, unless the opposite conclusion is clearly apparent. *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 484 (1989).

■ Claimant first contends on appeal that the Commission erred in concluding that the agreement and release barred his claim. He asserts that there was no evidence in the record to support this conclusion and that the Commission erred in finding that he knew or should have known of his occupational disease at the time he entered into the agreement.

As to a lack of evidence, the hearing on the employer's motion to dismiss was continued to allow claimant to provide testimonial evidence regarding his actual knowledge at the time he signed the agreement. Claimant failed to put forth any such evidence.

Documentary evidence, however, did exist and established the fol-

lowing history of events. On May 14, 1994, claimant executed an agreement that contained a release found in "Attachment 'A.' " In June 1994, claimant was paid $100,000 for a strained back and for the release that encompassed "all known and unknown injuries which allegedly resulted from any said specific accident, claims of repetitive trauma, and/or claims of exposure to noise or materials during employment with Peabody."

In July 1995, claimant filed a claim under the Act and alleged an injury of shortness of breath and exercise intolerance due to exposure to inhalation of coal dust, rock dust, fumes, and vapors for a period in excess of 28 years. Those 28 years ended two years prior to the signing of the agreement, on October 27, 1992, when claimant ceased working for the employer.

Based on the foregoing, the Commission inferred that since claimant quit working for the employer two years prior to signing the agreement, coupled with the fact that claimant was alleging that he had shortness of breath and exercise intolerance due to exposure of coal dust, rock dust, fumes, and vapors, at the time he filed his application in July 1995, he knew or should have known at the time he signed the agreement in May 1994 whether or not he was exposed to such materials during his employment and whether or not he had these claimed injuries due to that exposure.

The Commission, therefore, did not determine, as claimant suggests, that he knew or should have known of his "occupational disease." Nowhere in claimant's application did he state that he suffered an "occupational disease." He only sets forth a "claimed injury" of shortness of breath and exercise intolerance. It was this claimed injury, and the exposure which caused this injury, that the Commission found claimant knew or should have known about.

The inferences made by the Commission appear reasonable, and we will not reject the Commission's reasonable inferences merely because we might have decided differently on the same facts. See *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107 (1990).

Claimant next contends that the agreement should be read to contemplate only claims in existence at the time the agreement was executed. The language of the release, however, makes it clear that "It is the intent of the parties to purchase the peace with regard to *any and all claims which have been brought or could be brought* \*\*\*." (Emphasis added.) Therefore, we find that claimant's contention fails.

Claimant contends further that the nature of the claims being settled, as identified by the language of the agreement, is ambiguous. He maintains that had the employer wished to exclude lung injury

claims, resulting from coal dust, rock dust, fumes, or vapor exposure, it would have explicitly stated so, considering the employer's frequent dealings with such injuries.

The Commission disagreed and found that the release did contain sufficiently clear language that covered claimant's claimed injuries of shortness of breath and exercise intolerance. Specifically, in addition to his June 1, 1990, claimed back injury, the release encompassed:

> "any other claimed specific accidents or allegations of repetitive trauma or exposure to noise or materials during employment at Peabody \*\*\* and all known and unknown *injuries* which allegedly *resulted from* any said specific accident, claims of repetitive trauma, and/or *claims of exposure to noise or materials during employment with Peabody.*" (Emphasis added.)

The above language supports the Commission's finding that exposure to and inhalation of coal dust, rock dust, fumes, and vapors are covered by the language "claims of exposure to noise or materials during employment with Peabody." Considering that claimant's exposure to and inhalation of coal dust, rock dust, fumes, and vapors for over 28 years, and the effects of such exposure, are widely known in the industry, it is reasonable to conclude that the claimed injuries of shortness of breath and exercise intolerance were contemplated by the employer and covered by its release.

Claimant asserts, however, that the word "materials" is ambiguous, since it is not used in the same way as it is defined in the fourth edition of Black's Law Dictionary, that being: "The substance or matter of which anything is made. [Citations.] Matter furnished for the erection of a house, ship, or other structure which enters into and becomes part thereof." Black's Law Dictionary 1128 (4th rev. ed. 1968).

Claimant asserts further that the term "materials" is used in the Act only with reference to "radiological materials," and not occupational dusts or fumes.

Common sense tells us that the legislature in enacting laws, as did the drafters of this agreement and release, were not using the legal definition of the word "materials," which we note is not found in the fifth edition of Black's Law Dictionary (see Black's Law Dictionary 880 (5th ed. 1979)). The word "materials" is defined in Webster's Collegiate Dictionary as "the elements, constituents, or substances of which something is composed or can be made." Webster's Collegiate Dictionary 717 (10th ed. 1996). We agree with the Commission that the word "materials" is not an ambiguous term, but a collective noun, which describes a group of things.

We conclude therefore that the Commission properly found no ambiguity in the word "materials" and correctly held that the "exposure

to materials" encompassed claimant's claimed exposure by inhalation of coal dust, rock dust, fumes, and vapors.

Claimant also takes issue with use of the term "specific accident." He maintains that the Commission ignored this limiting language, which, he submits, contemplated specified causes of actions that existed at the time of the execution of the agreement and did not bar his claim. At best, claimant submits that the Commission should have found that this language makes the agreement ambiguous.

We disagree with claimant's assertion that the use of the term "specific accident" was meant to be limiting language. Due to the insertion of the word "or" along with this term, it may be reasonably interpreted as not limiting language but, instead, just one type of injury out of three possible scenarios. That being, one can bring a claim for "specific accident" or "repetitive trauma" or "exposure to noise or materials."

In *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984), the court held that the fact a not-yet-existing claim is not specifically enumerated in an agreement does not necessarily mean that the claim is not released. Claimant, however, cites this court's decision in *Countryman* to support his contention that claims intended to be released must be specified. Claimant, however, misinterprets our decision in *Countryman*.

In *Countryman*, the claimant suffered multiple accidents and separate injuries while working for the employer. In December 1992, the parties entered into a settlement agreement. Specific language in this settlement agreement identified accident dates; noted injuries to claimant's arms, wrists, and elbows; described the nature of his injury as bilateral carpel tunnel syndrome and elbow neuritis; and listed periods of temporary total disability. The settlement agreement stated further that it pertained to "this incident" and injuries incurred "as described herein" and "resulting from such accidental injuries." See *Countryman*, 292 Ill. App. 3d at 743.

A release was also included in the settlement agreement. It stated in part that "settlement is based on [claimant's] present condition and specifically includes any other accident, injury, aggravation, or onset of symptoms to the date of this settlement." *Countryman*, 292 Ill. App. 3d at 740.

In August 1991, the claimant filed a claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)) for a back injury he sustained prior to the execution of the settlement agreement. The arbitrator determined that the settlement agreement released claimant's claim against the employer for all accidental injuries incurred through the settlement date, and the Commission affirmed. The circuit court reversed the Commission, and this court affirmed the circuit court.

In affirming the circuit court, we determined that the language, "any other accident, injury, aggravation, or onset of symptoms to the date of settlement," was a general provision that conflicted with, and expressed different intentions from, the settlement agreement, which specifically identified claimant's injuries as being to his arms, wrists, and elbows. We concluded that this general language made the settlement agreement ambiguous as a matter of law. See *Countryman*, 292 Ill. App. 3d at 741.

This court stated that releases which contain both specific and general language are not ambiguous *per se*; however, we acknowledged that specific provisions do override general ones. See *Countryman*, 292 Ill. App. 3d at 743.

In *Countryman*, we held that the specific provisions relating to the release from accidents and injuries to claimant's arms, hands, and elbows controlled over the general release from all claims to the date of settlement. The employer failed to identify the claimant's back injury as being included in the settlement agreement, although it acknowledged that it was aware of this injury at the time the settlement agreement was executed. Thus, the circuit court's decision that the settlement agreement in *Countryman* did not bar the claimant's separate back-injury claim was affirmed.

In the instant case, unlike *Countryman*, the agreement and release do not contain conflicting provisions. In fact, the accident date on the agreement sets forth the same language as found in the release, that being, accidents occurring "on or about 6/1/90 or any other claimed specific accidents or allegations of repetitive trauma or exposure to noise or materials during employment at Peabody." The agreement specifically states that its purpose was to "purchase peace with regard to any and all claims which have been brought or could be brought pursuant to either the Illinois Worker's [*sic*] Compensation or Illinois Occupational Diseases Acts regarding Donald L. Mayhew." Further, the release specifically states that "the parties inten[d] for this provision of the contract to be enforced."

Following our decision in *Countryman*, we find that the specific provisions of the instant agreement and release control and render the document unambiguous.

Lastly, claimant contends that his exhibit 3 was improperly excluded. This exhibit was a May 9, 1994, letter written by one of his lawyers and offered as parol evidence to show that the intent of the parties prior to execution of the agreement was to include only those claims "to date." Claimant asserts that because the agreement was ambiguous, parol evidence may be properly admitted to clarify the parties' intent.

In *Bruner v. Illinois Central R.R. Co.*, 219 Ill. App. 3d 177, 180 (1991), it was noted that where terms are clear and unambiguous, in the absence of fraud, duress, mistake, or illegality, parol evidence cannot be used to vary those terms' ordinary and natural meaning.

The language of the instant agreement is clear and unambiguous and represented the agreement between the parties. Claimant has made no allegation of fraud, duress, mistake, or illegality concerning the execution of the agreement. Importantly, claimant does not allege mutual mistake of fact. Claimant had the opportunity to present testimonial evidence concerning his knowledge and intent at the time of the execution of the agreement; however, he failed to do so. Since the terms of the agreement are clear and unambiguous, claimant's exhibit 3 was properly excluded.

Based upon the foregoing, the circuit court of Gallatin County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and RARICK, JJ., concur.