VALERIE LEWIS-CONNELLY, Plaintiff-Appellee, v. BOARD OF EDUCATION OF DEERFIELD PUBLIC SCHOOLS, DISTRICT 109, Defendant-Appellant.

Second District   No. 2—95—0538

Opinion filed January 25, 1996.

A. Lynn Himes and Jon G. Crawford, both of Scariano, Kula, Ellch & Himes, Chartered, of Chicago, for appellant.

Irving M. Friedman and Denise S. Poloyac, both of Katz, Friedman, Schur & Eagle, Chartered, of Chicago, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, the Board of Education of the Deerfield Public Schools, District 109 (Board), appeals from an order denying its motion for summary judgment, granting summary judgment for plaintiff, Valerie Lewis-Connelly, and awarding plaintiff $13,920. The issues on appeal are whether the Board breached its employment contract with plaintiff by dismissing her because she was not certified to teach elementary school music and whether plaintiff failed to mitigate her damages. We reverse.

The following facts are from the affidavits and depositions submitted in connection with the parties' summary judgment motions. On October 29, 1974, the Illinois State Teacher Certification Board issued plaintiff a type 09 certificate. The certificate has remained current at all times since then.

Early in May 1993, Judi Lindgren, the principal of Kipling School, one of the District 109 schools, informed plaintiff that there

might be an opening for an elementary school music teacher for the 1993-94 school year. Plaintiff contacted Judy Stanley of the Lake County regional superintendent's office and inquired about obtaining an endorsement to teach elementary school music. Stanley informed plaintiff that the application for such an endorsement was a matter of paperwork and that plaintiff should have no problem obtaining it.

On May 5, 1993, plaintiff submitted to the Illinois State Board of Education (ISBE) her application for an endorsement to teach elementary school music. On May 11, plaintiff applied for the music teacher position at Kipling School. In the application, she stated that she held a type 09 certificate and that her application for a K-12 music certificate was pending.

Early in August, plaintiff interviewed for the music teacher position. During her interviews with Lindgren, Alan Levin, the director of personnel for District 109, and Glen W. McGee, the district superintendent, plaintiff stated that her application for an endorsement to teach elementary school music was still pending. Plaintiff was offered the position, and she began working at the beginning of the school year.

On October 28, 1993, the ISBE informed plaintiff that she needed to complete certain courses and tests before she could receive her elementary school music endorsement. On November 23, 1993, plaintiff traveled to Springfield to contest these findings. The ISBE amended its findings but continued to assert that plaintiff needed to remedy certain course work and test deficiencies.

On November 29, 1993, plaintiff applied for a substitute teaching certificate. The next day, plaintiff met with McGee, Levin, and Lindgren and discussed the steps that plaintiff would take to cure the deficiencies that the ISBE identified. McGee, Levin, and Lindgren reassured plaintiff and told her to cure the deficiencies.

On December 16, 1993, plaintiff received a substitute teacher's certificate and an endorsement to teach music for grades 6 through 12. During the winter break, plaintiff made arrangements to cure all of the identified deficiencies. She registered for and began taking the required courses and tests. In her affidavit, plaintiff claimed that she would have cured all of the deficiencies before the end of the 1993-94 school year.

On January 21, 1994, plaintiff received a copy of her employment contract for the 1993-94 school year. In his deposition, McGee testified that the Board tendered a written contract to plaintiff at this time because the Board felt it was necessary to formalize some of their procedures. The contract states:

"It is Hereby Agreed by and between [the Board] and [plaintiff],

a legally qualified teacher, that the said [plaintiff] shall provide services beginning August 26, 1993 and ending June 16[,] 1994 in said School District for the 1993-94 Fiscal Year, for the annual salary of $38,566.

It is Further Agreed that this contract is subject to the School Laws of Illinois, the regulations and policies of said Board, and the agreement between the [Board] and the Deerfield Education Association."

Plaintiff's substitute teacher's certificate expired on January 31, 1994. The School Code did not allow plaintiff to renew this certificate. (105 ILCS 5/21—9(b) (West 1994).) On February 8, 1994, McGee informed plaintiff that the Board terminated her employment. He also told plaintiff that she could continue working until a replacement was found. McGee informed her that a replacement would likely be hired by February 25. Another reason that plaintiff was allowed to continue working was so that she could direct upcoming student musical performances which could not have taken place without her presence. Plaintiff's final day of work was February 25.

The trial court found that the Board entered into an employment contract with someone it knew was not qualified to teach elementary school music and that plaintiff's termination constituted a breach of that contract. The court also found that, "[e]ven if the plaintiff breached a non-existing provision of the contract, the Board by its conduct would be estopped from asserting it after the Board *** received the benefits i.e. the musical production." The court awarded plaintiff the amount she would have received had she continued in her position for the remainder of the school year. The Board timely appealed.

Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1994); *First of America Bank v. Netsch* (1995), 166 Ill. 2d 165, 176.) When reviewing the trial court's ruling on a summary judgment motion, we conduct a *de novo* review of the evidence. (*Espinoza v. Elgin, Joliet & Eastern Ry. Co.* (1995), 165 Ill. 2d 107, 113.) Where the facts are not in dispute, the existence and interpretation of a contract are questions of law which the trial court may decide on a motion for summary judgment and which this court may independently review. *Bank of Hillside v. Laurel Motors, Inc.* (1994), 259 Ill. App. 3d 362, 365.

■ While a court will not imply factual conditions that the parties failed to express in a contract, a court cannot construe a contract

outside the legal conditions underlying a transaction. (*Mitchell Buick & Oldsmobile Sales, Inc. v. McHenry Savings Bank* (1992), 235 Ill. App. 3d 978, 985.) The existing laws and statutes as a matter of law become implied terms of the contract. *Mitchell Buick & Oldsmobile Sales, Inc.*, 235 Ill. App. 3d at 985.

■ The employment contract states that it is subject to the school laws of Illinois. The first School Code provision at issue here is section 21—1, which states:

"No one may teach or supervise in the public schools nor receive for teaching or supervising any part of any public school fund, who does not hold a certificate of qualification granted by the State Board of Education or by the State Teacher Certification Board and a regional superintendent of schools ***." 105 ILCS 5/21—1 (West 1994).

The second provision is section 21—1b, which provides:

"All certificates initially issued under this Article after June 30, 1986, shall be specifically endorsed by the State Board of Education for each subject the holder of the certificate is legally qualified to teach ***. All certificates which are issued under this Article prior to July 1, 1986 may, by application to the State Board of Education, be specifically endorsed for each subject the holder is legally qualified to teach." 105 ILCS 5/21—1b (West 1994).

■ Plaintiff argues that section 21—1 prohibits only the employment of a teacher who does not hold a certificate of qualification and does not prohibit a school district from employing a teacher who is certified but lacks an endorsement to teach the subject she was hired to teach. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. (*Payne v. Lake Forest Community High School District 115* (1994), 268 Ill. App. 3d 783, 785.) If the language of the statute is clear, the court must give it effect without turning to other statutory construction aids. *Payne*, 268 Ill. App. 3d at 785.

We disagree with plaintiff and conclude that the School Code clearly forbids a teacher from teaching a certain subject unless that teacher's certificate contains an endorsement for that subject. Section 21—1b states that the teacher's certificate must contain an endorsement for each subject she is "legally qualified to teach." (105 ILCS 5/21—1b (West 1994).) Because the sections of the School Code are *in pari materia*, they must be construed with reference to one another in order to give harmonious meaning to the act as a whole. *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 389.

According to the plain meaning of the language of section 21—1b, if a teacher's certificate does not contain an endorsement for a

particular subject, then the teacher is not "legally qualified" to teach that subject. By reading sections 21—1 and 21—1b together, it becomes evident that the legislature intended the "certificate of qualification" to be a certificate of qualification to teach those subjects identified in the certificate. Therefore, if a teacher's certificate does not contain an endorsement for a particular subject, then section 21—1 prohibits that teacher from teaching that subject.

Because this law must be considered a part of the contract, a basic condition of the Board's contractual duty to employ plaintiff and pay her salary was that plaintiff be certified to teach elementary school music. This case is similar to *Barter Exchange, Inc. v. Barter Exchange, Inc.* (1992), 238 Ill. App. 3d 187. There, franchisees in Illinois and Kentucky sought to rescind their franchise agreements because the defendant franchisor allowed its registrations to expire before the franchise agreements were executed. The court held that the Illinois and Kentucky laws requiring a franchisor to obtain a registration to do business within the State must be deemed a part of the respective franchise contracts. (*Barter Exchange*, 238 Ill. App. 3d at 192.) These laws, as implied terms of the contract, established conditions precedent to the effectiveness and enforceability of the contracts. Because the franchisor failed to satisfy the condition precedent of registration, the franchise contracts were not binding on the franchisees. *Barter Exchange*, 238 Ill. App. 3d at 193.

Similarly, sections 21—1 and 21—1b of the School Code must be considered a part of the employment contract between plaintiff and the Board. These provisions established a condition that plaintiff be certified in the subject area she was hired to teach. When plaintiff's substitute teacher's certificate expired on January 31, 1994, an essential condition of the contract was no longer satisfied. Therefore, the contract was no longer binding on the Board.

Relying on *Morris v. Illinois State Board of Education* (1990), 198 Ill. App. 3d 51, and *Ballard v. Board of Education of Rock Island School District No. 41* (1988), 167 Ill. App. 3d 224, plaintiff claims that the Board was required to grant her an opportunity to remedy the deficiencies before terminating her employment. These cases do not apply here because they involved tenured teachers. The courts in *Morris* and *Ballard* interpreted section 24—12 of the School Code (105 ILCS 5/24—12 (West 1994)), which dictates the circumstances under which teachers in contractual continued service may be dismissed. *Morris*, 198 Ill. App. 3d at 55-56; *Ballard*, 167 Ill. App. 3d at 227-28.

Section 24—11 defines "contractual continued service" as employment "in any district as a full-time teacher for a probationary period

of 2 consecutive school terms." (105 ILCS 5/24—11 (West 1994).) Because plaintiff was not in contractual continued service, she cannot benefit from the *Morris* and *Ballard* courts' interpretation of section 24—12, which explicitly speaks of remediability (105 ILCS 5/24—12 (West 1994)). The distinction that plaintiff draws between "qualified" and "certified" is relevant only for determining whether a tenured teacher's conduct is remediable. We decline to apply this concept of remediability to situations not involving tenured teachers.

■ Having concluded that the Board did not breach the employment contract, we must address the trial court's finding that the Board was estopped from relying on plaintiff's lack of certification to teach elementary school music as a justification for dismissing her. According to the trial court, the estoppel doctrine applied because the Board allowed plaintiff to teach music for over three weeks after her substitute teacher's certificate expired and "received the benefits *i.e.* the musical production it wanted."

Defendant correctly asserts that "the doctrine of estoppel cannot be invoked against a public body when the action taken by it was *ultra vires, i.e.*, beyond its authority and void." (*Evans v. Benjamin School District No. 25* (1985), 134 Ill. App. 3d 875, 883.) Here, the Board's action of allowing plaintiff to teach until February 25 was beyond its authority because sections 21—1 and 21—1b prohibited such action. "The doctrine of estoppel may not be applied to validate an *ultra vires* act, and we will not do so here." *Evans*, 134 Ill. App. 3d at 883.

Because the Board did not breach its contract with plaintiff, we need not address whether plaintiff failed to mitigate her damages. The foregoing analysis reveals that the material facts are not in dispute and that the Board was entitled to judgment as a matter of law. Therefore, the trial court erred in denying the Board's motion for summary judgment and granting plaintiff's motion for summary judgment.

For these reasons, we reverse the judgment of the circuit court and enter judgment in favor of the Board pursuant to Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)).

Reversed.

BOWMAN and THOMAS, JJ., concur.